**NATIONAL WILDLIFE FEDERATION, et al., Plaintiffs,**

v.

**William P. CLARK, et al., Defendants.**

**Civ. A. No. 84–2272.**

United States District Court, District of Columbia.

June 13, 1985.

---

Edward Lee Rogers, Washington, D.C., for plaintiffs.

George William Sherk, Fred Disheroon, U.S. Dept. of Justice, Washington, D.C., for defendants.

Kathleen Liston Morrison, Asst. Atty. Gen., N.Y. State Dept. Law, Environmental Protection Bureau, Albany, N.Y., for amicus curiae.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

Plaintiffs, the National Wildlife Federation (NWF) and the Missouri Department of Conservation (MDC), are challenging the repeal of certain regulations of the United States Water Resources Council (WRC) and the adoption of new nonregulatory guidelines for agency planning of federal water resource development projects. In counts I and II, plaintiffs contend that the Council's actions were arbitrary and capricious or an abuse of discretion, in violation of section 10 of the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A) and the requirements of the Water Resources Planning Act (WRPA), 42 U.S.C. § 1962 (1976) and § 1962a–d (Supp. IV 1980). In counts III and IV, plaintiffs contend that the failure of the WRC to prepare an environmental impact statement (EIS) and the inadequacy of the environmental assessment which was prepared in connection with the challenged actions, violate the National Environmental Policy Act (NEPA), 42 U.S.C.

§§ 4321–4347 (1976) (Supp. V 1981). Defendants, as members of the WRC, have filed a motion to dismiss, which is before the court.

### Background

The WRC was created by the WRPA of 1965, and is currently composed of the Secretaries of the Departments of Agriculture, Army, Commerce, Energy, Housing and Urban Development, Transportation and Interior and the Administrator of the United States Environmental Protection Agency. The stated policy of the WRPA is to "encourage the conservation, development, and utilization of water and related land resources of the United States on a comprehensive and coordinated basis by the Federal Government, States, localities and private enterprise with the cooperation of all ... concerned." 42 U.S.C. § 1962. The Act provides that the WRC "shall establish ... principles, standards, and procedures for Federal participants in the preparation of comprehensive regional or river basin plans and for the formulation and evaluation of Federal water and related land resources projects." 42 U.S.C. § 1962a–2. The Council is authorized to "make such rules and regulations as it may deem necessary or appropriate" for carrying out its statutory duties. 42 U.S.C. § 1962d–1.

In 1968, the Council began developing procedures to serve as the general framework for water resources planning activities. These procedures were directed at improving the quality of life as affected by water resources projects and related land resources development through the coordination of two primary objectives—enhancement of the national economic development and enhancement of the quality of the environment. According to the plaintiffs, prior to the promulgation of regulations in 1980, numerous water resource projects were planned and constructed with highly deleterious and inadequately evaluated environmental impacts and without predicted economic benefits, because the WRC proce-dures were not binding on the federal officials administering the WRPA. As a result, the President directed the WRC in 1978 to evaluate and reform agency planning practices. This Presidential directive concerned the cost-benefit analyses and included the development of procedures to ensure that environmental values as well as economic efficiency were considered. In response, the WRC promulgated the regulatory "Principles, Standards and Procedures for Water and Related Land Resources Planning," (PS & P), 18 C.F.R. §§ 711, 713, 714 and 716, which incorporated the requirements of NEPA and the regulations of the Council on Environmental Quality concerning NEPA. These regulations became effective on October 29, 1980, shortly before the change of administration.

Within a year, on September 11, 1981, the Council published a notice of proposed repeal of the PS & P, and thereafter published the proposed "Economic and Environmental Principles and Guidelines for Water and Related Land Resources Implementation Studies" (P & G) for comment on March 22, 1982. The PS & P were repealed and the P & G adopted on March 10, 1983. 48 Fed.Reg. 10,250 and 10,259. The P & G are nonbinding guidelines which differ from the previous regulations, *inter alia*, in that they eliminate the longstanding environmental quality objectives and designate the national economic development as the sole primary federal objective. The WRC explained that " ... the change from regulations to guidelines ... removes or reduces the threat of litigation for failure to comply, thus permitting planners to focus on the appropriate task and not on a concern for mechanical compliance with complex and detailed regulations." 48 Fed. Reg. at 10,251. An environmental assessment of the repeal of the PS & P and the issuance of the P & G was prepared on August 19, 1982, which concluded that the change would not significantly affect the quality of the human environment. Accordingly, no EIS was prepared.

## Discussion

Defendants raise essentially three arguments in their motion to dismiss: (1) that plaintiffs lack standing under the APA; (2) that the establishment of WRC guidelines and procedures is solely committed to agency discretion; and (3) that the NEPA claims are not ripe for judicial review. Upon consideration of the submissions of the parties and of New York State Department of Environmental Conservation, as *amicus curiae,* we conclude that each of defendants' arguments is without merit.

### Standing Under the APA

Because the WRPA does not specifically provide for judicial review of WRC actions, plaintiffs must establish standing under the general provisions of the APA. 5 U.S.C. § 702. The APA provides a cause of action for a plaintiff "adversely affected or aggrieved by agency action within the meaning of a relevant statute...." Federal court jurisdiction exists under 28 U.S.C. § 1331, provided that judicial review is not precluded and that the plaintiffs satisfy the requirements of standing, as set forth by the Supreme Court. The plaintiffs must allege some "injury in fact" which is " 'arguably within the zone of interests to be protected or regulated' by the statute[ ] that the agenc[y] [is] claimed to have violated." *Sierra Club v. Morton,* 405 U.S. 727, 733, 92 S.Ct. 1361, 1365, 31 L.Ed.2d 636 (1972), *quoting Association of Data Processing Service Organization, Inc. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 829–30, 25 L.Ed.2d 184. The Supreme Court has indicated that courts should not lightly deny standing under the APA to litigants raising statutory challenges to agency action. *See id.,* 397 U.S. at 154–55, 90 S.Ct. at 830–31.

■ Plaintiff NWF is the largest public interest group dedicated to education concerning the need for conservation of our natural resources. It alleges that its members use the waters of the United States and associated lands for recreation, education, aesthetic enjoyment and also for drinking water and that the repeal of the PS & P and adoption of the non-regulatory P & G threaten to harm these interests by diminishing protection to water and related resources and increasing the likelihood of their destruction. Plaintiff MDC alleges that it is responsible for the management and conservation of Missouri fish, wildlife, and forestry resources and that it participates in the federal planning process for water projects affecting Missouri. MDC alleges that its ability to function will be adversely affected by the WRC actions because planning under the new P & G will be more likely to result in the diminution or destruction of the resources which MDC manages and conserves.

Defendants, on the other hand, argue that plaintiffs fail to allege any actual or threatened injury because the regulations whose repeal is at issue affect only the pre-authorization agency planning process for water resource development projects, and not projects which have been authorized by Congress. Before the construction of any project, it is recognized that Congress must give authorization and appropriate the necessary funds. Therefore, defendants urge that there is no causal connection between the actions of the WRC and any injury alleged by plaintiffs. Defendants suggest that the plaintiffs suffer no injury from changes to the planning process for the additional reason that the National Environmental Policy Act must be complied with before any individual project may be constructed. The environmental effects of a given project may be reviewed at that time.

We are not persuaded by these arguments, which would have the court rule that agency planning of projects affecting the environment may not ever give rise to injury in fact, and thereby effectively insulate agency planning from judicial review under the APA. In *Environmental Defense Fund v. Marsh,* 651 F.2d 983 (1981), the Fifth Circuit found that injury in fact

resulted from agency actions which directly affected the agency evaluation of a project and ultimately whether such project was recommended to Congress for construction. *Id.*, at 1003–04. The court reasoned that projects likely to be recommended were likely to be constructed, and that it would be incorrect to attribute resulting injury to Congress' action, thereby precluding judicial review of the agency process.

The challenge in this case concerns the lawfulness of procedural changes which govern the planning for all executive branch water resource proposals, with widespread threat of harm alleged. In the context of reviewing a particular project under NEPA, there will be no judicial review of these administrative actions which directly affect the type of projects which are recommended to Congress for construction. We believe that the analysis of *EDF v. Marsh* applies to this case and that the plaintiffs allegations of injury to aesthetic and other non-economic interests satisfy the requirement of injury in fact. *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975); *United States v. SCRAP*, 412 U.S. 669, 686, 93 S.Ct. 2405, 2415, 37 L.Ed.2d 254 (1973).

■ Defendants also argue that plaintiffs' interests are not arguably within the zone of interests to be protected by the WRPA. Despite the agency history of requiring detailed environmental quality evaluations as part of the PS & P and earlier WRC guidelines, defendants maintain that the WRPA never required such evaluations. Rather, they argue that the principal purpose of the WRPA was to coordinate national water planning and resolve interagency conflicts. Defendants point out that the D.C. Circuit Court of Appeals has stated that Congress is the intended beneficiary of the WRPA, and conclude that plaintiffs therefore lack standing to challenge the WRC. *Isaac Walton v. Marsh*, 655 F.2d 346 (D.C.Cir.), *cert denied*, 454 U.S. 1092, 102 S.Ct. 657, 70 L.Ed.2d 630 (1981).

While the first of these arguments may aid defendants on the merits of plaintffs' WRPA claim, and the second might suffice to deny plaintiffs an implied private right of action under the WRPA, neither argument defeats plaintiffs' claim that planning for the protection of environmental interests falls arguably within the zone of interests to be protected by the WRPA. Both the President and the WRC have historically read the WRPA mandate to include environmental quality objectives. The 1965 policy statement of the WRPA states that it is Congress' intent to "encourage the conservation ... of water and related resources." Given these facts, we have no difficulty concluding that the plaintiffs' claimed injury falls "arguably" within the zone of interests to be protected by the WRPA and that plaintiffs have standing to challenge defendants' actions as being arbitrary and capricious under the APA.

*Judicial Review*

■ Having concluded that plaintiffs have standing to sue under the APA, we must also consider defendants' argument that the repeal of the PS & P and the issuance of the P & G are within the discretionary authority of the WRC and not subject to judicial review. Defendants rely for this point on *Isaac Walton*, which held that federal courts do not have jurisdiction to review particular cost-benefit analyses prepared for the benefit of Congress once Congress has acted on the agency proposal. 655 F.2d at 357–58. Defendants reason that if these analyses are not subject to review, then the procedures governing the preparation of analyses must also be beyond review.

We are not satisfied that *Isaac Walton* reaches the particular facts of this case. It is true that the court did find that the purpose of the WRPA was to assist Congress in evaluating water projects, but it focused on the fact that Congress had already reviewed the analysis at issue, in deciding that the court should not thereafter interfere. More generally, the court

recognized that "determination of economic costs and benefits is a matter of legislative judgment and that, since the analyses are performed for Congress, the legislative branch rather than the judiciary is best suited to review their adequacy." *Id.*, at 358. We do not disagree with this broad proposition. Thus, it is clear that the Court of Appeals, in ruling that individual cost benefit analyses are not subject to review after Congress has acted, did not address whether the WRC rulemaking and repeal process, prior to action by Congress, is subject to review under the APA. *See Motor Vehicles Mfrs.' Assn v. State Farm Mutual Auto Ins. Co.*, 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).

The APA exception to the general rule of reviewability for agency action "committed to agency discretion by law" is extremely narrow. The Congressional intent to preclude review must be demonstrated by "clear and convincing evidence." *Barlow v. Collins*, 397 U.S. 159, 166–67, 90 S.Ct. 832, 838, 25 L.Ed.2d 192 (1970). In our view, defendants have failed to meet this burden.

*Ripeness*

■ Finally, defendants argue that plaintiffs' claims under NEPA are not ripe for review because only concrete project proposals are susceptible to judicial review for compliance with NEPA. Defendants rely principally on the Supreme Court's discussion in *Kleppe v. Sierra Club*, 427 U.S. 390, 96 S.Ct. 2718, 49 L.Ed.2d 576 (1976) to the effect that courts should not require the preparation of impact statements prior to an agency's making a report or recommendation on a proposal for action with respect to a particular project. 427 U.S. 390 at 406, 96 S.Ct. at 2728. The court's concern in *Kleppe* was directed at the possibility of judicial interference in the day to day decisionmaking process of agencies, by prematurely requiring compliance with NEPA.

In this case, however, there is no dispute that in repealing the PS&G and issuing the P&G the WRC has taken "final agency action." NEPA requires that federal agencies prepare an EIS for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). In addition, the WRC supplemental NEPA procedures, 18 C.F.R. § 707 (1984), state that the promulgation of significant changes in the principles, standards and procedures for planning water and related land resources is an action requiring an environmental assessment or environmental impact statement.[1] In fact, an environmental assessment was prepared in this case and it is the adequacy of this assessment as well as the WRC decision not to prepare an EIS that the plaintiffs challenge. Clearly, the case is ripe for decision. Judicial review of these WRC actions under NEPA will not "hazard unnecessary disruption." 427 U.S. at 406 n. 15, 96 S.Ct. at 2728 n. 15.

For the foregoing reasons, we conclude that plaintiffs have standing to bring this action, that the matter is subject to judicial review and is ripe for adjudication.

An order consistent with this opinion has been entered this day.

---

**1.** *Cf. Kleppe,* in which the Supreme Court noted that the Department of the Interior correctly understood that it was required to prepare an EIS in connection with its final report on a proposal for the adoption of a new national coal-leasing program, because this was a "coherent plan of national scope" and its adoption "surely [had] significant environmental consequences." 427 U.S. at 400, 96 S.Ct. at 2726. *See also id.,* at 406 n. 14, 96 S.Ct. at 2727 n. 14.